Putnam J.
delivered the opinion of the Court. The jury-have found their verdict for the plaintiff upon one or both of the following grounds, viz. that the note was given for the use of the firm and in the authorized course of their business, or that the proceeding was ratified by the defendants.
It is contended, however, that the judge misdirected the jury in regard to the discretion which the acting partner has by law to manage the concerns of the partnership, by which instructions the jury might consider the firm bound by such partner acting according to his discretion, although not within the general scope of the partnership, — whereas (it is argued) the discretion must be limited to matter within the general scope of the business; that the judge substituted the discretion of the acting partner as the standard, instead of the well known rule of law which limits his authority to concerns within the course of the partnership. But we do not think that the instructions are liable to this objection, because the questions whether the acting partner exercised a sound discretion or not and whether the matter was within the general scope of the business or not, were left to be settled by the jury. It could only be understood from the charge, that the party must act with such fidelity and discretion, as would be approved ultimately, by the jury, if it should be questioned, and not that the opinion of the party himself should be the standard or rule of the correctness of his own conduct.
Again, it is contended, that as the purchasing of pork and flour for exportation evidently did not relate to the busi*y»ss of the firm, the judge should have instructed the jury, that me evidence which was offered concerning it and tending to prove that it did come within the general scope of the business, should have been rejected as irrelevant or altogether insufficient. But it is very clear that there must have been contradictory evidence upon the point at the trial. Whether the *439 acting partner made the purchase on his own account, or for the firm, — whether or not the firm had been in the constant usage of exporting their manufactures for sale, to foreign countries, and of importing foreign merchandise in return, — whether the party acted discreetly or not in the particular transaction, —for the partnership, or colórably and fraudulently with a regard to his own interest, — were considerations for the jury. Sound discretion is to be proved by reference to a great variety of things having a bearing upon the fact to be ascertained. It was not for the judge, in the course of the trial, to weigh them, but to leave them for the consideration of the jury. And we think that the defendants have no reason to complain of the charge in this particular. The judge told the jury, that prima facie, the purchase of merchandise for exportation was not within the scope of the business.
But if the facts which must have been found by the jury, will not warrant the verdict, it would be the duty of the Court *x> set it aside, because the law resulting from the facts so established must be determined by the Court.
It is said that the business of the partnership was the manufacturing of soap and candles, and was not to be extended to the chartering of ships, and the purchase of merchandise for exportation, unconnected with the manufacturing establishment.
The correctness of these objections must be tested by reference to the general objects of the company. The manufacture of soap and candles to some extent, is indeed a simple business, and common in almost every farming establishment in New England. But the views of these defendants were not confined to domestic use or consumption, either in respect to the quantity or to the disposition of their manufactures.
The case finds that Winship was the acting partner, and that he made large purchases for the use of the firm, and had for years before exported large quantities of soap and candles to foreign markets for sale, and received in return, produce of foreign growth, which the Binneys sold as commission merchants and accounted for the same to Winship for the firm. The importation of foreign merchandise for sale, would seem to be as much unconnected with the ostensible object of the partners, as the exportation of domestic produce would be. *440 But it is very obvious that both the exportation and the impoi tation of such goods or produce might greatly facilitate the manufacturing establishment. The usage as to the importation was proved. The usage of exportation of the manufactures to foreign ports for sale was proved. A great capital was employed. The company looked beyond this country for the raw materials, as well as for markets for their manufactures. They became merchant manufacturers, and their extensive plans opened a wide field for commercial enterprise. The ways and means must be devised by the acting partner. In the case under immediate consideration, it became expedient to send the manufactures to tire West Indies for sale. How shall they be carried ? Shall they be only "put on board the vessels of others upon freight, or may it not be prudent and discreet to charter a vessel for that purpose ? If the latter course is pursued, -and if the manufactures do not complete her freight, is it not consistent with sound discretion to fill her up with merchandise which promises a profit at the port of destination ? If it were proved to the jury, that large importations of merchandise had been made, in aid and on the account of the concern, could they reasonably doubt that circumstances might occur, which would render the exportation of domestic produce advantageous to the same general interest ? For example, suppose that flour would pay'a good freight in the West Indies, and that sugars could there be procured upon good terms and shipped to Russia, to purchase a return cargo of raw materials for the manufactory ; could it be questioned, upon‘the facts proved in the case, that the jury might find such an operation to be within the general scope of this extended partnership ? It is a firm of very humble pretensions ; but operating with a great capital, in the business of commerce, as well as in manufacturing. How should these great projects be executed ? As is before observed, the ways and means must be found by the acting partner. He must act with fidelity and sound discretion within the general scope and intent of the company, or he acts at his peril. If the jury shall not be satisfied that he has acted within such scope, the firm will not be answerable. We cannot perceive that any *441 rules could be framed, which would be more reasonable than these, which are familiar and well established.
If the jury affirmed the propositions which the judge submitted to them hypothetically in the part of the charge now under consideration, we think it very clear that the verdict should be established.
And the same result would follow, if they proceeded upon the other ground, viz. upon the ratification of the doings of the acting partner. The Binneys were upon the spot, with the knowledge of the purchase and appropriation for their own use and that of their agent. They suffer him to proceed and to export the goods for their joint account, without any notice to him that he is acting beyond or against the authority delegated to him. They cannot afterwards be permitted to dis-affirm the transaction.[1]
The jury must have proceeded upon one or both grounds above stated, and either would be sufficient to support their verdict.

 See Hewes v. Parkman, 20 Pick. 90.